## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY– NEWARK DIVISION

| | |
|---|---|
| JEFFREY A. STUBITS, individually and on behalf of all other persons similarly situated who were employed by DENVILLE LINE PAINTING, INC., <br><br> Plaintiff, <br><br> - against - <br><br> DENVILLE LINE PAINTING, INC., <br><br> Defendant. | Case No.: 18 cv 00649-CCC-MF |

### *UNOPPOSED* MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL APPROVAL OF THE PROPOSED SETTLEMENT AND ATTORNEYS FEES AND COSTS AND SERVICE AWARDS

**VIRGINIA & AMBINDER, LLP**
Lloyd Ambinder, Esq.
40 Broad Street - 7th Floor
New York, NY  10004

**FARUQI & FARUQI**
Innessa Melamed Huot, Esq.
685 Third Avenue - 26th Floor
New York, NY  10017

*Attorneys for Plaintiffs and Class*

1

## **INTRODUCTION**

Plaintiffs submit this memorandum of law in support of their unopposed motion for final approval of the proposed settlement as set forth in the Settlement Agreement and Release (hereinafter the "Settlement Agreement"). Specifically, Plaintiffs seek an order to (1) approve the settlement as fair, reasonable, and adequate for both Rule 23 Class Members, (2) bind all Rule 23 Class Members who have not timely opted out to the Release as set forth in the Stipulation, (3) award Class Counsel attorneys' fees and costs in the amount equal to $397,945.98 (4) award services awards to Named Plaintiff Jeff Stubits in the amount of $7,500.00, (5) award the Settlement Administrator costs and fees of $15,000.00 and (6) dismiss the Litigation with prejudice.

On September 20, 2019, this Court took the first step in the settlement approval process by granting preliminary approval of the settlement as set forth in the Settlement Agreement directing that notice be distributed to Rule 23 Class Members, and setting the date for the final fairness hearing. [See Docket No. 36]. The Rule 23 Class is defined as: "all individuals who performed construction work as employees of Denville Line Painting, Inc. including line-painting on publicly financed projects in New York during the period January 11, 2012 and December 31, 2017." [See Doc. 35-3 Settlement Agreement and Release at §1.7]

Rule 23 Class Members have been notified of the terms of the settlement by mailing publication, the monetary relief, the allocation formula, and their right to opt out of or object to the settlement. For the reasons stated below, it is respectfully submitted that this Court should grant final approval.

## PROCEDURAL BACKGROUND

### I.    The Litigation

Plaintiff and members of the putative class worked as line painters on public roads. The putative class consists of several hundred individuals who performed this work for Defendants. Plaintiffs do not contest that they were paid the proper rate of wages for hours worked on the projects; rather, Plaintiffs allege that they were not paid the rate of supplemental benefits they were required to receive pursuant to Labor Law § 220 for each hour that they worked and that they may not have been paid for all hours worked.

### II.    Applicable Law

Under New York law, the requirement to pay supplemental benefits under Labor Law § 220 can be satisfied in one of three ways. First, if the contractor is a signatory to a collective bargaining agreement with a labor union, the full amount of the supplemental benefit payment can be remitted to a union benefit fund. *See* 12 NYCRR § 220.2(a)(1). Second, all or a portion of the benefit requirement "may be satisfied by paying to the laborers, workers and mechanics affected in cash with the regular weekly wages, the cost of such supplement(s) as contained in the current annually determined prevailing wage schedule." *See* 12 NYCRR § 220.2(b).

Third, and as relevant here, employers may take a credit against Labor Law § 220's requirement to provide prevailing rates of supplemental benefits for benefits actually paid by the employer – such as 401(k) contributions, health insurance premiums, and the like. However, the employer may not take full credit for all such in-kind benefit payments against the supplemental benefit requirements of Labor Law § 220. Pursuant to 12 NYCRR § 220.2(d):

> To determine the hourly cash equivalent of any applicable supplement provided to or on behalf of laborers, workers and mechanics employed upon public work projects in accordance with subdivision (a) of this section, the Commissioner of Labor will…

3

divide the actual contribution or cost for providing such supplement by the total annual hours worked on both public and private work.

Thus, if a worker works 2000 hours in a year for an employer, with 1000 hours on public works jobs requiring the payment of prevailing rates of supplemental benefits, and 1000 hours on private jobs with no such prevailing rate requirements, only 50% of the value of employer-provided health insurance premium payments, 401(k) contributions, and the like can be credited towards the employer's prevailing rate of supplemental benefit obligations. This requirement is known under New York law as the "annualization" requirement – that is, that all benefit remittances must be "annualized" across all hours of both public and private work in order to determine an hourly supplemental benefit rate credit for in-kind benefit payments.

The Second Circuit Court of Appeals has repeatedly recognized that New York's "annualization" requirement is lawful and appropriate. In *HMI Mechanical Systems, Inc. v. McGowan*, 266 F.3d 142, 151 (2nd Cir. 2001), the Second Circuit recognized that:

> The annualization formula calculates the level of prevailing supplement contributions by dividing the employer's total actual contribution on behalf of its workers by the total annual hours (both public and private) that an employee worked. According to [the employer], this formula always results in a shortfall in its contributions if an employee performed any private work during the period analyzed. However, that is precisely the desired effect of Section 220, which creates an economic disincentive for employers to use pooled supplement plans… The current enforcement method of NYSDOL thus directly affects employers by eliminating incentives for them to pool supplement contributions among public and private workers.

The Second Circuit has specifically held that the annualization requirement is not subject to ERISA preemption (*HMI Mechanical Systems, Inc.*, *supra*, 266 F.3d at 151: "ERISA does not preempt a law that uses economic incentives in this way"), and that it is not subject to NLRA preemption (*Rondout Elec., Inc. v. N.Y. State DOL*, 335 F.3d 162, 169 (2nd Cir. 2003): "Without some connection between the prevailing wage supplement and labor/management bargaining, the

4

annualization regulation fails to come within the sphere of *Machinists* preemption under the NLRA").

New York Courts have repeatedly held that claims for underpayment of prevailing wages and supplemental benefits owed pursuant to New York Labor Law § 220 are appropriate for class certification (*see, e.g. Ramos v. SimplexGrinnell LP*, 796 F.Supp.2d 346 (E.D.N.Y. 2011)("numerous courts have found that wage claims are especially suited to class litigation – perhaps 'the most perfect questions for class treatment' – despite differences in hours worked, wages paid, and wages due"); *Isufi v. Prometal Construction, Inc.,* 161 A.D.3d 623 (1st Dept. 2018) (collecting cases); and have specifically held that Labor Law § 220 annualization claims are appropriate for class action treatment (*see, e.g. Vandee v. Suit-Kote Corp.,* 162 A.D. 3d 1620 (4th Dept. 2018)).

### III.    Investigation and Discovery

Before entering into the Settlement Agreement, Class Counsel conducted thorough investigations of Plaintiffs' claims, which included legal research on the underlying merits, the likelihood of class certification, the likelihood of decertification of the Rule 23 Class, the financial viability of the Defendant, the proper measure of damages, and Defendants' affirmative defenses. See: Declaration of Lloyd Ambinder in Support of Final Settlement Approval ("Ambinder Decl.") ¶ 39.

The parties also engaged in significant discovery. Formal discovery included reviewing payroll and time records. In addition, Class Counsel engaged in numerous discussions with the Named Plaintiffs, opt-in plaintiffs and putative class members. Ambinder Decl. ¶¶ 6-7. Additional discovery was exchanged during settlement negotiations, including extensive data relating to the proposed Class. *Id.*

## IV.    Settlement Negotiations

The parties devoted the better part of nine months attempting to settle this action. To this end, Defendants' produced almost payroll and time records; Plaintiffs' Counsel conducted interviews with putative class members, Defendants produced data and other information for the proposed Class in response to discovery demands, and counsel for the parties participated in multiple in-person and telephone settlement conferences, the results of which have culminated in this proposed settlement. These in-person and telephonic conferences helped the parties narrow ultimately resulting in a settlement reached with the assistance of mediator Stephen Sonneberg, Esq. at a private mediation held at JAMS New York offices on June 19, 2019. *See* Ambinder Declaration ("Ambinder Decl.") ℙ 5.

## SETTLEMENT PROCEDURE AFTER PRELIMINARY APPROVAL

### I.    Notice Distribution

The Court approved Notice and Claim Form and Release (attached as Exhibit A) were distributed by first class mail on October 21, 2020 to 222 Class Members. [*See*: Ambinder Decl. Ex. C Settlement Administrator Thomas Kulak]. A total of 17 Notices were returned undelivered without forwarding addresses. Through the advanced address searches, the Claims Administrator was able to locate 17 updated addresses and promptly mailed Notice Packets to those updated addresses. In all, 17 Notices were re-mailed. Of those, none were returned undelivered a second time. [See: Ambinder Decl. Kulak Decl. Ex. "C" ℙ8]

A total of 118 individuals filed claim forms with the Claims Administrator (53% opt-in rate). [Ambinder Decl. Ex. "C" ℙℙ 8 - 13] No Class Members elected to opt-out or object to the settlement. [Ambinder Decl. Ex. "C" ℙ13] Of the 118 Authorized Claimants of which 100 will be receiving the settlement payments, the highest Gross Allocation Amount is $26,208.58 and the

lowest Gross Allocation Amount is $66.65. The average Gross Allocation Amount per Authorized Claimant is $12,629.57.

1.  The claims are summarized as follows:

| | |
|---|---|
| Class Notice and Claim Form Deadline Date: | October 21, 2019 |
| Number of Class Members: | 222 |
| Undeliverable Notices: | 0 |
| Opt-outs: | 0 |
| Objections to Settlement | 0 |

| | |
|---|---|
| Total Authorized and timely Claims: | 118 |
| Claims receiving the settlement checks | 100 |
| Claims not receiving settlement checks | 18 |
| Total Late Claims | 4 |
| Total Unresolved Claims | 2[1] |

2.  Subject to court approval the following shall be distributed:

| | |
|---|---|
| Claimants: | $ 725,945.98 |
| Professional Fees and Costs: | $ 397,849.07 |
| Service Awards: | $ 7,500.00 |
| Class Administration: | $ 15,000.00 |
| Employer's Share of Payroll Taxes: | $ 83,704.95 |
| **TOTAL PAYMENT:** | **$ 1,230,000.00** |

## ARGUMENT

## I.  The Settlement Class Meets the Legal Standard for Class Certification.

When faced with a proposed class action settlement, courts first examine whether the settlement class can be certified. *In re Pet Food Prods. Liab. Litig.*, 629 F3d 333, 341 (3d Cir 2010). On September 20, 2019, the Court preliminarily certified the settlement class consisting of

---

[1] The claims of Kyle Kathens and Ian Lijoi have not been reconciled as of the date of this Declaration.

individuals who performed construction work as employees of Denville Line Painting, Inc. including line-painting on publicly financed projects in New York during the period January 11, 2012 and December 31, 2017." [See Doc. 35-3 Settlement Agreement and Release §1.7]. The Court should now grant final certification because the settlement meets all of the requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). Plaintiffs respectfully request that the Court certify the Rule 23 Class for purposes of settlement.

Under Rule 23, a class action may be maintained if all of the prongs of Rule 23(a) are met, as well as one of the prongs of Rule 23(b). Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires the Court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." *Id.* at (b)(3).

**A. Numerosity**

Numerosity is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates the potential number of plaintiffs exceeds 40" then the numerosity requirement is met. *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). The numerosity requirement is easily satisfied because there were 222 Class Members on the Class Member Mailing List provided by Defendants. [Ambinder Decl. ¶¶ 8, 13. ]

8

## B. Commonality

The commonality requirement is satisfied "if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 528 (3d Cir. 2004); *Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (*citing In re "Agent Orange" Prod. Liab. Litig.*, 818 F.2d 145, 166 (2d Cir. 1987); *see also Bernhard v. TD Bank, N.A.*, 2009 U.S. Dist. LEXIS 92308, 10 (D.N.J. 2009). The burden to meet the commonality requirement is "low" and "easily met in most cases because all that is required is one common issue." *Bredbenner v. Liberty Travel, Inc.*, 2011 U.S. Dist. LEXIS 38663, 17 (D.N.J. 2011) (*citing Neal*, 43 F.3d at 56); *In re School Asbestos Litigation*, 789 F.2d 996, 1010 (3d Cir. 1986) ("the threshold of commonality is not high.").

Named Plaintiffs and Class Members performed construction-related work for Defendants. They mainly allege that Defendant paid them less than the applicable prevailing supplemental hourly rate as promulgated by the New York Department of Labor.   Here, the main common issues include whether Defendants paid less than the NYDOL published supplemental benefit rate when annualized against all compensable hours worked on both government and non-government projects. [Ambinder Decl., ¶¶ 17-18.]

The legal and factual claims in this case are nearly identical to those alleged in *Bredbenner v Liberty Travel, Inc.*, where the Court found commonality exists and certified the action under Rule 23 for purposes of settlement. *See Bredbenner,* at *18 (The overtime claims in *Bredbrenner* were even more individualized as they implicated four different state laws).   Accordingly, Plaintiffs easily satisfy the commonality requirement.

**C. Typicality**

Rule 23(a) requires that the Named Plaintiffs' claims be "typical" of the proposed class. The typicality requirement "does not mandate that all putative class members share identical claims," and "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to claims of the class members, and if it is based on the same legal theory." *Barnes v. American Tobacco Co.*, 161 F.3d 127, 141 (3d Cir. 1998).

Here, Named Plaintiff Stubits and Class Members all seek the *exact same relief --* underpaid wages in the form of supplemental benefits. Named Plaintiffs and Class Members all allege that they were subject to the same unlawful policy and practice of not having their supplemental benefit payment annualized for all compensable hours worked. Because Named Plaintiffs' wage and hour claims arise from the same factual and legal circumstances that form the basis of Class Members' claims, Plaintiffs satisfy the typicality requirement.

**D. Fair and Adequate Representation**

Rule 23(a)(4) requires that the Named Plaintiffs be able to adequately protect the interests of the Class members. The adequacy of representation prong involves a two-step inquiry: (1) whether Class Counsel is qualified, and (2) whether any conflict or antagonistic interests exist between the Named Plaintiffs and the Class Members. *Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 247 (3d Cir. 1975).

There is no evidence that the Named Plaintiff's and class members' interests are at odds. Additionally, to the best of Class Counsel's knowledge, there is no competing litigation already commenced by any member of the class. Ambinder Decl. ¶ 21-22. Class Counsel also meet the adequacy requirement as they are experienced litigators who have successfully represented classes

10

in numerous class actions and have considerable employment law experience. Ambinder Decl. ¶ 23 (listing cases).

### E. Predominance and Superiority

Rule 23(b)(3) requires that the common questions of law or fact "predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Predominance is satisfied when "the issues common to the class predominate over individual issues . . . ." *In re Hydrogen Peroxide Antitrust Litig.*, 552 F.3d at 311. Where common issues which determine liability predominate, calculating damages on an individual basis does not prevent an otherwise valid certification. *Schwartz v. Avis Rent a Car Sys., LLC*, 2014 U.S. Dist. LEXIS 121322, 22 (D.N.J. 2014) (citing Holmes v. Pension Plan of Bethlehem Steel Corp., 213 F.3d 124, 137 (3d Cir. 2000)).

Rule 23(b)(3) also requires that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Courts are to consider "the interest of the members of the class in individually controlling the prosecution or defense of separate actions and the difficulties likely to be encountered in the management of a class action." Fed. R. P. 23(b)(3). Courts also look to such factors as whether "a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated" *Amchem Prods. v. Windsor, 521 U.S. 591, 615 (1997).*

Once again, the Class Members' common factual allegations and legal theory – that Defendants failed to pay the correct rate of supplemental prevailing benefits  predominate over any variations among Class Members. Moreover, settlement damages are uniformly calculated by applying a mechanical formula to the class as a whole.

Class adjudication of this case is also superior to individual adjudication because it will conserve judicial resources and avoid inconsistent judgments. Further, given the expense of litigation and the relatively small size of numerous individual claims, many members of the class simply could not afford to pursue redress absent class treatment. Given these facts, a class action is superior to other available methods of adjudicating this controversy.

Finally, in numerous similar wage and hour actions, courts within the Third Circuit have granted class certification for purposes of effectuating settlement. *See Bredbenner v Liberty Travel, Inc.*, 2011 US Dist LEXIS 38663 (DNJ 2011); *Bernhard v TD Bank, N.A.*, 2009 US Dist LEXIS 92308 (D.N.J. 2009); *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, 2009 US Dist LEXIS 60790 (ED. Pa. 2009); *Lenahan v Sears, Roebuck & Co.*, 2006 US Dist LEXIS 60307 (D.N.J. 2006). Accordingly, Plaintiffs' respectfully request that the Court grant class certification for purposes of settlement.

## II.  The Proposed Settlement Is Entitled to an Initial Presumption of Fairness

Rule 23(e) requires court approval for a class action settlement to insure that it is procedurally and substantively fair, reasonable and adequate. Fed. R. Civ. P. 23(e). As explained by Judge Falk in *Bredbenner*:

> A class settlement is entitled to an "initial presumption of fairness" when "(1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Gen. Motors, 55 F.3d at 785* (citing 2 Newberg on Class Actions § 11.41 at 11-88 (3d ed. 1992)); Manual for Complex Litigation (Third) § 30.42, at 238 (1997). This presumption may attach even where, as here, settlement negotiations precede class certification.

*See Bredbenner*, at 29-30.

Here, Class Counsel is highly experience in handling wage and hour class actions, and specifically prevailing wage and benefit clas actions such as this. In addition, the class

settlement was a product of months of negotiations, which included two in-person conferences and private mediation before JAMS mediator Stephen Sonneberg, Esq.

The settlement formula and allocations were based on the review of contemporaneous of payroll and time records. The parties engaged in substantial confirmatory discovery.  Most importantly, not a single Class Member objected or affirmatively opted-out of the settlement. Accordingly, the instant settlement is entitled to an initial presumption of fairness.

### III.  The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Approved in All Respects.

To determine substantive fairness, courts determine whether the settlement's terms are fair, adequate, and reasonable according to the factors set forth in *Girsh v Jepson*, 521 F2d 153, 157 (3d Cir. 1975). The *Girsch* factors include: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *See Bredbenner*, at 31-32 (*citing Girsh*).  These factors "embody a substantive inquiry into the terms of the settlement itself and a procedural inquiry into the negotiation process." *Bredbenner*, at 32-33 (*citing Prudential II*, 148 F.3d at 324).

### 1.  Litigation Through Trial Would be Complex, Costly and Long (*Girsh* Factor 1)

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class. Indeed, "[t]his factor is intended to 'capture the probable cost, in both time and money, of continued litigation.'"

*Bredbenner*, at 29-30 (quoting In re Gen. Motors, 55 F.3d at 812). This case is no exception, with 222 Class Members who worked on dozens of public projects throughout New York over a six year span.

Further litigation here would cause additional expense and delay. Plaintiffs would likely file a motion for class certification. Defendants would likely file a motion to decertify the class in the future. The Parties likely would file cross-motions for summary judgment. If the Court denied the motions, a fact-intensive trial would necessarily follow.

In light of the number of public projects at tissue, a trial would clearly be lengthy and complex, and would consume tremendous time and resources for the Parties and the Court. The instant settlement makes monetary relief available to Class Members in a prompt and efficient manner. See *Bredbenner*, at 34 (By reaching a settlement at this stage of litigation, the parties "avoid the costs and risks of a lengthy and complex trial.") (quoting *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010).

### 2.    The Reaction of the Class Has Been Positive (Girsh Factor 2)

The second factor measures "whether members of the class actually support the settlement." *Bredbenner*, at 34 (citing Prudential II, 148 F.3d at 318). "Courts generally assume that silence constitutes 'tacit consent' to the settlement terms." *Bredbenner*, at 34 (quoting Bell At. V. Bolger, 2 F.3d 1304, 1314 n. 15 (3d Cir. 1993). Accordingly, "courts look to the 'number and vociferousness of the objectors.'" *Bredbenner*, at 34 (quoting In re Gen. Motors, 55 F.3d 812).

Here, the Court approved Notices, including a widely distributed newspaper notice, was disseminated to Class Members that included the allocation formula, a clear and informative summary about the claims in this case, and specific instructions on how to object or opt-out of the settlement. To date, not a single Class Member has opted out or objected to the terms of the

14

settlement. Accordingly, the reaction of the Class Members in this case strongly supports a finding in favor of approving the instant settlement.

**3.** **Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (Girsh Factor 3)**

Although preparing this case through trial would require hundreds of hours of discovery for both sides, the parties have completed enough settlement discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 537 (3d Cir. 2004).

Plaintiffs' Counsel investigated and performed legal research on the underlying merits of the potential class claims, the likelihood of obtaining liquidated damages and the proper measure of damages. As part of Plaintiffs' investigation, Plaintiffs' Counsel interviewed Plaintiffs and numerous Class Members. Class Counsel reviewed data and documents produced by Defendants. With discovery and due diligence, Class Counsel possessed sufficient information to assess the relative strengths and weaknesses of the case in reaching a fair settlement.

**4.** **Plaintiffs Would Face Real Risks if the Case Proceeded (Girsh Factors 4 and 5)**

This factor measures the "'possible risks of litigation' by balancing the likelihood of success, and the potential damages award, against the immediate benefits offered by settlement." *Bredbenner*, at 37 (*citing Prudential II*, 148 F.3d at 319). In weighing these considerations, "the Court should not press into the merits of the case and instead rely to a certain extent on the estimation provided by class counsel, who is experienced with the intricacies of the underlying case." *Id.* (citations omitted). Here, as in *Bredbenner*, the immediate cash payout provided by the class settlement offers a substantial benefit over the many risks and costs Plaintiffs would face in litigating their claims to conclusion.

In order to successfully litigate this case, Plaintiffs will have to establish liability and damages. This will entail showing that Plaintiffs benefits were not paid correctly at the applicable trade classifications and NYDOL published prevailing benefit rates. Accordingly, the instant settlement, which provides an immediate cash payout, and offers a significant benefit to Class Members, especially in the face of the foregoing considerable risks.

### 5. Maintaining the Class Through Trial Would Not Be Simple (Girsh Factor 6)

The risk of obtaining certification and maintaining it through trial is also present. The Parties anticipate that a determination on class certification would be reached only after further discovery and exhaustive briefing. In opposing class certification, Defendants would likely argue that individualized questions preclude class certification. Settlement eliminates the risk, expense, and delay that permeates such processes. Settlement eliminates the risk and delay inherent in this process. As such, this factor weighs in favor of approval.

### 6. Defendants' Ability to Withstand a Greater Judgment is Not Determinative (Girsh Factor 7)

While it is not clear whether Defendants could withstand a greater judgment, their ability to do so does not preclude a finding that the settlement is fair and reasonable. *See Bredbenner*, at 41 ("courts in this district regularly find a settlement to be fair even though the defendant has the practical ability to pay greater amounts."). Here, the settlement allocations were based on review and analysis of payroll and time records produced by the Defendants, making it unlikely that Class Members would be entitled to much more even if Defendants had the ability to pay more. Thus, this factor is neutral and does not preclude the Court from granting final approval.

### 7. The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (Girsh Factors 8 and 9)

To determine whether a settlement amount is reasonable, "the Court analyzes the reasonableness of the settlement against the best possible recovery and the risks the parties would face if the case went to trial." *Bredbenner*, at 43 (*citing Prudential II*, 148 F.3d at 322). In cases where monetary relief is sought, "the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement." *See Bredbenner*, at 43 (*quoting In re Gen. Motors*, 55 F.3d at 806 (quoting Manual for Complex Litigation (Second)) § 30.44, at 252 (1985))). Precise value determinations, however, are not necessary. *See id. (citing In re Pet Food Prods. Liability Litig.*, 629 F.3d 333, 355 (3d Cir. 2010) (*citing In re Warfarin*, 391 F.3d at 538).

Here, Defendants have agreed to pay $1,230,000.00 to Claimants inclusive of costs, fees and service awards. This amount represents the sum of the settlement allocations designated for each Class Member. The negotiations over and ultimate basis for the formula for calculating individual settlement allocations turned on the number of days and hours each Class Member worked each week. Named Plaintiffs alleged in the complaint that they typically did not receive the correct supplemental benefit rate published by the NY DOL based on Defendant's failure to annualize the payments based on work performed on both government and private projects. Accordingly, even though recovery could be greater if Plaintiffs overcame motions to decertify any class and succeeded on all claims at trial, the substantial settlement sum paid by the Defendants represents considerable value given the attendant risks of litigation.

## V. Class Counsel's Request for Fees and Costs is Reasonable

For the reasons set forth below, Class Counsel respectfully submits that the attorneys' fees and expense reimbursement they seek are fair and reasonable under the applicable legal standards, and should be awarded in light of the contingency risk undertaken and the result achieved in this

case. Class Counsel also respectfully submit that the service awards for Plaintiffs are proper in recognition of the services they rendered on behalf of the class.

## I.     **Class Counsel is Entitled to a Reasonable Fee of the Settlement Fund**

Class Counsel is entitled to reasonable attorneys' fees to compensate them for their work in recovering unpaid wages on behalf of the class. The Settlement Agreement, which has been preliminarily approved by the Court, provides that Class Counsel may apply for no more than 33% for professional fees, costs, and expenses. [See: Doc 35-1 Settlement Agreement ¶ 3.4 (C)]

V&A and F&F expended 574.70 hours of attorney, paralegal, and staff member time for a lodestar total of $195,813.00. Each of these hours was recorded contemporaneously when the work was performed. This figure represents a 2.03 multiplier based on a requested  fee of $397,945.98 inclusive of costs ($397,945.98 ÷ $195,813.00 = 2.03). The fees sought also represent 22.71% of the $1,751,904.00 Settlement Fund.

## II.     **The Percentage Method Is the Preferred Method for Awarding Attorneys' Fees in Common Fund Cases in the Third Circuit**

Notwithstanding that Class Counsel's lodestar hourly billings are well within an acceptable range for a class certification fee application, the prevailing methodology in the Third Circuit is to employ the percentage of recovery method to award attorneys' fees in common fund cases. *Bredbenner*, at *52-53 (*citing In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F3d 768, 821 (3d Cir 1995)).  The Third Circuit favors percentage of recovery in common fund cases because it permits courts to grant fees in a manner that rewards counsel for its success and penalizes it for failures. *In re Rite Aid Corp. Sec. Litig.*, 396 F3d 294, 300 (3d Cir. 2005).

The Third Circuit in *Gunter v. Ridgewood Energy Corp.* set forth several factors for assessing the appropriateness of attorneys' fees: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class

to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2000) (citations omitted).

1.      **Size of the Fund and Number of Persons Benefitted**

In this case, the substantial portion of settlement fund of $725,945.98 will be allocated to participating Claimants. [Ambinder Decl. ¶14] Although the fund in this case is not a "mega-fund," it is nevertheless substantial. This settlement also represents a significant benefit considering the risk that litigating this case through trial could have resulted in a finding of no liability to the Defendants. Indeed, as explained Claimants are receiving much of the actual damages they were allegedly owed. The quality of the settlement and benefit to Claimants supports a finding in favor of approving this settlement.

2.      **Presence or Absence of Substantial Objections**

The notice to the Class Members, which was preliminarily approved by the Court, clearly explains the nature and scope of this settlement. To date, no Class Member has objected to the requested attorneys' fees, expense reimbursement or method of disbursement.  The lack of objections to Class Counsel's fee and cost reimbursement request is indicative of the reasonableness of the requested award and weighs in favor of approving it. *Bredbenner*, at 52 (D.N.J. 2011) (*citing Lenahan v Sears, Roebuck & Co.*, 2006 US Dist LEXIS 60307 (D.N.J. 2006)).

3.      **Skill and Efficiency of Class Counsel**

The skill and efficiency of class counsel is "measured by 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and

expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *Bredbenner,* at *56-57 (citations omitted). Here, Class Counsel is highly experienced in handling wage and hour class actions, and handled this complex class action in kind. Ambinder Decl., ¶ 44.

### 4.    <u>Hours Worked and Risk of Non-Payment</u>

Courts consider the risk of non-payment in light of the Defendant's ability to satisfy an adverse judgment, *Yong Soon Oh v. AT&T Corp.*, 225 F.R.D. 142, 152 (D.N.J. 2004), or the risk of establishing liability at trial. *In re Cendant Corp. Litig.*, 264 F.3d 201, 339 (3d Cir 2001).

Here, Class Counsel has no reason to believe that Defendants cannot satisfy the adverse judgment.   However, Class Counsel undertook to prosecute this action without any assurance  of payment for their services, litigating this case on a wholly contingent basis in the face of significant risk. Prevailing wage class action cases of this type are, by their very nature, complicated and time-consuming. Any lawyer undertaking representation of large numbers of affected employees in such actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, lawyers are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. Class Counsel stood to gain nothing in the event the case was unsuccessful.

Class counsel has expended over 574.70 hours in bringing this case to resolution. Ambinder Decl., ¶ 42. The hours recorded were incurred investigating claims, interviewing putative class members, reviewing documents produced by Defendants, drafting and opposing motions and letters to the court, and engaging in substantial settlement negotiations. The complexity of the issues before the Court, coupled with the risk of non-payment, supports a finding that the fee requested is reasonable.

**5.      Awards in Similar Cases**

In addressing this factors, "the Court should (1) compare the actual award requested to awards in comparable settlements, and (2) ensure that the award is consistent with what an attorney would have likely received if the fee was negotiated on the open market." *Bredbenner*, at 59-60 (citations omitted). In common fund cases, fee awards generally range from 19% to 45% of the settlement fund. *Bredbenner*, at 59-60 (*citing In re Gen. Motors*, 55 F.3d at 822 (*citing In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 533 (E.D. Pa. 1990))).

The fee award request in this case is approximately 31.9 percent of the settlement fund, which is well within the proper range and consistent with fee awards in similar wage and hour cases within the Third Circuit. *Bredbenner*, at 59-60 (citing numerous cases). The percentage award in this case is also consistent with prevailing contingent fee rates in non-class action cases. *Id*.

**6.      Lodestar Cross-Check**

In determining the lodestar for cross-check, the court is not required to engage in a "full-blown lodestar inquiry," or "mathematical precision." *Bredbenner*, at 61-62 (citations omitted); *Dewey v Volkswagen of Am.*, 728 F Supp 2d 546, 592 (D.N.J. 2010) (Where there have been no objects to the lodestar calculations, a full-blown lodestar analysis is unnecessary and inefficient use of judicial resources.).

To date, Class Counsel's attorneys and paralegals have worked 574.70 hours for a total of $195,813.00 in billed hours.  Ambinder Decl., ¶ 42. The fee request under the percentage of recovery method represents 2.03 times the lodestar. The Third Circuit has approved a crosscheck multiplier of 3. *In re Cendant Corp. Litig.*, 264 F3d 201, 256 (3d Cir. 2001). The Court in *Bredbenner* approved a cross-check multiplier of 1.88.  A multiplier of 1.56 is entirely reasonable

and reflects the risks assumed by assumed by Class Counsel in taking this case on a contingency basis and the level of skill brought to this complex litigation. Accordingly, Class Counsel respectfully requests that the Court find the requested fee proper even under the lodestar method.

**7.    Reimbursement of Expenses**

Class Counsel also requests reimbursement of $4,366.42 in out-of-pocket expenses as "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal citation and quotation marks omitted). Class Counsel incurred actual expenses for costs such as the JAMS mediation, court and process server fees, postage and, transportation, discovery costs, photocopies, and legal research. Ambinder Decl. ¶ 49 These expenses were incidental and necessary to the representation of Plaintiffs and the Class and adequately recorded. *Id.*

**III.    The Requested Service Awards Are Reasonable and Should Be Approved**

Service awards are fairly common in class action lawsuits involving a common fund for distribution to the class. *Bredbenner*, at 63. The Service Awards that the Plaintiffs request are reasonable given the significant contributions that Named Plaintiffs made to the prosecution and resolution of the lawsuit. Courts acknowledge that plaintiffs play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny. *See Velez v. Majik Cleaning Serv., Inc.*, 2007 WL 7232783, *7 (S.D.N.Y 2007) ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or coworkers."); *see generally* Nantiya Ruan, *Bringing Sense to Incentive Payments: An*

*Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006).

The purpose of service awards is to "compensate named plaintiffs for 'the services they provided and the risks they incurred during the course of class action litigation,' id., and to 'reward the public service' of contributing to the enforcement of mandatory laws." *Bredbenner,* at 63-64 (*citing In re Cendant*, 232 F. Supp. 2d at 344 (*citing In re SmithKline Beckman Corp. Sec. Litig.*, 751 F. Supp. 525, 535 (E.D. Pa. 1990)); *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009))).

Named Plaintiff Stubits contributed a significant amount of time and effort to the case by providing Class Counsel with detailed factual information regarding  job duties, Defendants' policies, and other information relevant to the claims of the Class. He also regularly made himself available to communicate with Class Counsel when necessary, including throughout the settlement process, attending litigation strategy meetings, and relaying messages to class members. In addition, Named Plaintiff regularly followed up with Class Counsel to check on the status of the case and ensure that it was moving toward resolution. The benefits of the class wide settlement agreement are as a direct result of the services rendered by the Named Plaintiff Stubits.

The requested Service Awards of $7,500.00 to the Named Plaintiff is well within the awards regularly provided in similar cases. *Bredbenner*, 66-67 (citing cases of awards ranging between $5,000 and $30,000); *see also* 4 Newberg on Class Actions § 11.38, at 11-80 (citing empirical study from 2006 that found average award per class representative to be $16,000.

## **CONCLUSION**

For the reasons set forth above, the undersigned  respectfully requests that the Court: (1) approve the settlement as fair, reasonable, and adequate for Rule 23 Class Members, (2) bind all Rule 23 Class Members who have not timely opted out to the released claims as set forth in the

Settlement Agreement, (3) award Class Counsel attorneys' fees and costs in the amount of $397,945.98, (4) grant a service award to Named Plaintiff Jeff Stubits in an amount equal to $7,500.00, (5) approve class administration costs of $15,000.00, and (5) dismiss the action with prejudice.

Dated: New York, New York
           March 23, 2020

                                            VIRGINIA & AMBINDER, LLP

                                            /s/ Lloyd Ambinder, Esq.